UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

CRIMINAL ACTION NO. 03-36-DLB
CIVIL ACTION NO.  06-221-DLB

UNITED STATES OF AMERICA,                                                            PLAINTIFF,

V.     **MAGISTRATE JUDGE'S REPORT
       AND RECOMMENDATION**

DWAYNE R. HALL,                                                                      DEFENDANT.

I.  INTRODUCTION

On October 4, 2004, Dwayne R. Hall pleaded guilty to conspiracy to possess with intent to distribute a quantity of Oxycontin, and unlawful possession of two silencers, in violation of 21 U.S.C. § 841(a)(1), 26 U.S.C. § 5861(d) and 21 U.S.C. § 853. [Record Nos. 69 & 72.] Defendant has completed his obligation to the Bureau of Prisons and was discharged under a program of supervised release on January 12, 2007.[1]  Hall is now before the Court upon his pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. [Record No. 99.]

The United States has filed a motion to dismiss Defendant's collateral attack. [Record No. 103.] The Defendant has filed a response to the United States' motion to dismiss. [Record No. 107.] The Defendant has also filed a motion to reconsider [Record No. 106], in response to the undersigned's denial of Defendant's motion to appoint counsel [Record No. 102].  Thus, fully

---

[1] The custody requirement for filing a motion to vacate under 28 U.S.C. § 2255 is met in the instant case, as the Sixth Circuit Court of Appeals has ruled that supervised release is considered being "in custody." U.S. v. Sandles, 469 F.3d 508, 517 (6th Cir. 2006).

briefed, Defendant's motion to vacate, set aside, or correct his sentence [Record No. 99] pursuant to 28 U.S.C. § 2255 is now ripe for review. Consistent with standard practice in the Eastern District of Kentucky, this matter has been referred to the undersigned for the preparation of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On August 28, 2003, a federal grand jury indicted Defendant on charges of knowingly and intentionally manufacturing and producing more than 100 marijuana plants, in violation of 21 U.S.C. § 841(a)(1) (Count 1); knowingly and intentionally possessing with intent to distribute a quantity of marijuana, in violation of 21 U.S.C. § 841(a)(1) (Count 2); knowingly and intentionally possessing with intent to distribute a quantity of Oxycontin, in violation of 21 U.S.C. § 841(a)(1) (Count 3); being an unlawful user of controlled substances while knowingly possessing multiple firearms and several rounds of ammunition, in violation of 18 U.S.C. § 922(g)(3) (Count 4); knowingly possessing two (2) barrel silencers which were not registered to him, in violation of 26 U.S.C. § 5861(d) (Count 5); using the firearms and ammunition referenced in Count 4 in furtherance of the crimes alleged in Counts 1, 2 and 3, in violation of 18 U.S.C. § 924(c)(1)(A)(I) (Count 6); by virtue of the felony offenses charged in Counts 4, 5 and 6, Defendant forfeits any and all interest in the firearms listed in Count 4, pursuant to 18 U.S.C. §§ 924(d)(1), 922(g)(3) and 28 U.S.C. § 2461. (Count 7); and using or intending to use certain real and personal property in the commission of the crimes charged in Counts 1, 2 and 3, in violation of 21 U.S.C. § 841(a)(1). [Record No. 7.]

Defendant entered into a plea agreement with the United States in which he agreed to plead guilty to Counts 3, 5 and 8 of the indictment. [Record No. 66.] He was rearraigned on October 4,

2004, and the plea agreement was conditionally accepted by the Court. [Record No. 69.] Hall was sentenced on January 3, 2005, to 37 months imprisonment and three (3) years supervised release. [Record No.73.] The remaining counts were dropped upon motion of the United States. [Id.] As part of the plea agreement, Hall stipulated to the following facts:

> (a) That on or about 1 August 2003, in Pike County within the Eastern District of Kentucky (EDKY) a state search warrant was executed at the defendant's residence in Pike County. During the course of that search approximately 40 Oxycontin 40 milligram pills were located. There was [sic] approximately 93 marijuana plants located and a small quantity of processed marijuana located. The oxycontin was possessed with the intent to distribute.
>
> (b) Also, located in the residence were 8 firearms and 2 barrel silencers. The silencers were not registered in the National Firearms Registration and Transfer Record. Approximately $1,522 in United States currency, a 1996 Dodge Pickup, a 1976 Harley Davidson motorcycle, and numerous firearms as further described in Count 8 were located.
>
> (c) Oxycontin is a schedule II controlled substance and Marijuana is a schedule I controlled substance.

[Record No. 72 ¶ 4(a)-(c).]

The plea agreement also set forth the maximum possible penalties for the offenses [id. ¶ 4] and contained the following non-binding sentencing recommendations:

> (a) United States Sentencing Guidelines, November 1, 2003 manual will determine the Defendant's guideline range.
>
> (b) The parties agree that the amount of controlled substances foreseeable to this defendant is a marijuana conversion of not less than 20 kilograms and not more than 40 kilograms. Pursuant to § 2D1.l, the base offense level is 18.
>
> (c) Pursuant to § 2B1.l(b)(1l)(B), the base offense is increased by two (2) levels as a dangerous weapon was possessed in connection with the offense.
>
> (d) Pursuant to § 2K2.l(a)(4)(B), the base offense for Count 5 is a level 20 as the silencers are prohibited firearms as defined by 26 U.S.C. § 5845(a) and the defendant is an unlawful user of marijuana.

>(e) The United States agrees that the base offense level for Counts 3 and 5 "group" for a combined offense level of 20.
>
>(f) Pursuant to § 3El.l(a), decrease the base offense level by 2 levels for the Defendant's acceptance of responsibility. The United States will move for an additional one level decrease at the time of sentencing.

[Id. ¶ 7.]

The parties also stipulated that no agreement existed as to what the Defendant's actual sentence would be. [Id. ¶ 5.] The plea agreement contained a waiver whereby the Defendant relinquished his "statutory right to appeal and the right to collaterally attack the guilty plea, conviction, and any lawful sentence." [Id. ¶ 12.] Defendant acknowledged his understanding of the agreement and his acceptance of all of the terms therein at his rearraignment. [Record No. 72 ¶ 17; Record No. 111, 12-29.]

For sentencing purposes, Defendant was assigned a base offense level of 20, with a four-level enhancement for the presence of firearms, resulting in a total offense level of 24. Defendant then received a three-level decrease for his timely acceptance of responsibility, for an adjusted offense level of 21.

On January 3, 2005, Defendant was sentenced to 37 months imprisonment followed by a three-year term of supervised release. [Record No. 73.] Defendant filed a direct appeal, challenging his sentence. [Record No. 77.] The Sixth Circuit Court of Appeals granted the United States' motion to dismiss, holding that the United States did not breach the plea agreement and that the waiver agreed to by the Defendant was knowing and voluntary. [Record No. 96.]

On October 10, 2006, Defendant filed the instant motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. [Record No. 99.]

In his motion to vacate, Defendant claims that ineffective assistance of counsel induced him to sign a plea agreement containing a waiver of his right to collaterally attack or undertake a direct appeal of his conviction. [Record No. 99.] Specifically, Defendant claims that his counsel was ineffective for the following reasons: (1) inducing the Defendant to accept the plea offer; (2) failing to protect the Defendant in the plea agreement; (3) failing to demand disclosure of confidential sources, challenge a test conducted by law enforcement and destruction of exculpatory evidence; (4) failing to investigate possible defenses; and (5) failing to argue ineffective assistance of counsel on appeal or, alternatively to declare a conflict of interest. [Id.]

The United States responded by filing a motion to dismiss [Record No. 103], and Defendant responded. [Record No. 107.] For the reasons provided below, it will be recommended that Defendant's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [Record No. 99] be denied and the United States' motion to dismiss [Record No. 103] be granted.

### III. ANALYSIS

A. Standard of Review

To prevail upon a motion to vacate a sentence under 28 U.S.C. § 2255, a movant must allege that: (1) his conviction resulted from an error of constitutional magnitude; (2) his sentence was imposed outside the statutory limits; or (3) an error of fact or law occurred that was so fundamental as to render the entire proceedings invalid. Mallett v. United States, 334 F.3d 491, 496-97 (6th Cir. 2003), cert. denied, 540 U.S. 1133 (2004); see also Moss v. United States, 323 F.3d 445, 454 (6th Cir.), cert. denied, 540 U.S. 879 (2003). However, a defendant cannot utilize a § 2255 motion to re-litigate an issue that was raised and considered on appeal, absent highly exceptional circumstances,

5

such as an intervening change in the law.  Stephan v. United States, 496 F.2d 527, 528-29 (6th Cir. 1974), cert. denied, 423 U.S. 861 (1975); see also United States v. Prichard, 875 F.2d 789, 790-91 (10th Cir. 1989).  Nor may a Defendant use a § 2255 motion as a substitute for bringing a direct appeal.  Reed v. Farley, 512 U.S. 339, 354 (1994).  A federal prisoner seeking collateral review under § 2255 of an issue not previously raised on direct appeal must first show cause to excuse his failure to do so and actual prejudice resulting from the alleged violation.  Id.  However, ineffective assistance of counsel claims are not cognizable in a direct appeal because the record is generally inadequate to permit review.  Massaro v. United States, 538 U.S. 500, 504-05 (2003); United States v. Combs, 369 F.3d 925, 940 (6th Cir. 2004); United States v. Brown, 332 F.3d 363, 368-69 (6th Cir. 2003).  Therefore, such claims are properly reviewed in a § 2255 proceeding.  Massaro, 538 U.S. at 504; Combs, 369 F.3d at 940; Brown, 332 F.3d at 369; see also Ciak v. United States, 59 F.3d 296, 303-04 (2nd Cir. 1995) (noting that it is not realistic to expect appellate counsel, who served as the defendant's trial counsel, to raise an ineffective assistance of counsel claim on direct appeal).

    B.  Waiver

Before reaching the relative merits of Defendant's motion to vacate for reasons of ineffective assistance of counsel [Record No. 99], the Court must first address the argument raised by the United States that Defendant, as part of his plea agreement, waived his statutory right to collaterally attack his guilty plea, conviction, and sentence.  [Record No. 103.]  In this case, Defendant entered into a plea agreement with the United States.  [Record No. 72.]  The language of that agreement contains a waiver of the right to collaterally attack his guilty plea, conviction, and sentence.  [Id. ¶ 12.]  The United States contends that Defendant knowingly and voluntarily executed a valid waiver, which effectively forecloses his right to pursue the current motion to vacate.  [Id.]  However, Hall argues

that, due to the ineffective assistance of counsel, he was induced to sign the plea agreement and it should therefore not be enforced to bar this action. [Record No. 99, 4.]

As part of a plea agreement, a defendant may validly waive the statutory right to appeal a sentence so long as the waiver is informed and voluntary. See e.g., United States v. Bazzi, 94 F.3d 1025, 1028 (6th Cir. 1996) (defendant's waiver of right to appeal accuracy of sentencing factors stipulated to as part of a plea agreement is binding); United States v. Allison, 59 F.3d 43, 46 (6th Cir. 1995) (defendant may not appeal issues waived in a plea agreement); United States v. Ashe, 47 F.3d 770, 775-776 (6th Cir. 1995) (any right, including a constitutional right, may be surrendered in a plea agreement if the waiver is made knowingly and voluntarily). A defendant may also validly waive the statutory right to collaterally attack a sentence. Watson v. United States, 165 F.3d 486, 489 (6th Cir. 1999) (defendant's informed and voluntary waiver of the right to collaterally attack a sentence in a plea agreement bars such relief); see also Davila v. United States, 258 F.3d 448, 451 (6th Cir. 2001) (where a defendant knowingly, intelligently, and voluntarily waives the right to collaterally attack a sentence, defendant is precluded from bringing a claim of ineffective assistance of counsel).

At Hall's rearraignment, the District Court meticulously reviewed the plea agreement with Defendant, and he repeatedly confirmed his understanding and acceptance of the terms of the plea agreement. [Record No. 111.] In response to questioning from the District Court, Defendant indicated that he had carefully reviewed the plea agreement and discussed it with his attorney. [Id. at 8-9.] He further agreed that he understood the terms and did not enter into the agreement as a result of force or coercion. [Id. at 9-10.] Defendant admitted that the United States could prove the facts as set out in Paragraph 4 of the Plea Agreement [Record No. 72], agreed that they were true, and adopted them as his own statement of the facts. [Record No. 111, 11.] Defendant also indicated

that he understood the minimum and maximum statutory punishments [id. at 16], discussed the United States Sentencing Guidelines with his attorney [id. at 19], and agreed that the Guidelines would be used in determining his sentence [id. at 19-22]. Finally, Defendant stated that he understood he was waiving his right to appeal and to collaterally attack his sentence. [Id. at 22-23.]

Hall argues that his counsel unfairly induced him to sign the plea agreement and, as a result, the waiver contained therein is invalid. In effect, the Defendant appears to argue that the negligent actions of defense counsel led him to "voluntarily" accept the plea agreement and waiver provision and that he only later realized that he had been deceived.[2] However, despite his assertions to the contrary, it is clear that Hall executed a valid plea agreement with the United States in which he waived his right to collaterally attack his sentence. [Record No. 72.] A review of the record clearly demonstrates that the waiver entered into by Hall was knowing, intelligent and voluntary, and would therefore act as a bar to the current action.

Notwithstanding this conclusion, the undersigned is mindful that, were Hall's claims to be meritorious, he could not avail himself of direct appeal to assert ineffective assistance of counsel in most instances and would likely have to resort to a petition filed under § 2255 to address his claims of error. A defendant bringing such a claim, on a theory of ineffective assistance of counsel, could never prevail if the waiver were enforced to bar his claim. Accordingly, in the interest of completeness, and cognizant that Defendant's petition was filed pro se, the undersigned will continue below to address each of his claims of ineffective assistance of counsel individually.

---

[2] It is noteworthy that the Defendant's direct appeal to the Sixth Circuit was an attempt to force the United States to honor the plea agreement, as the Defendant argued that the United States violated that agreement. The Sixth Circuit upheld the waiver, but also reviewed his claim on the merits and found it to be without merit. [Record No. 96.] Now, for reasons unexplained, the Defendant argues in his § 2255 petition that the agreement is unfair to him.

### C. Defendant's Claims

The Defendant claims that he was "induced" to sign the plea agreement and accept the waiver of his right to collateral attack and appeal, citing several reasons for this inducement. [Record No. 99.] The record, however, clearly refutes all of these claims. It is unclear from Defendant's petition whether he intends the ineffective assistance of counsel claims to challenge the validity of the plea agreement, or his conviction as a whole. For the reasons stated below, Defendant's claims are without merit in both respects and do not support the relief he seeks.

A defendant asserting ineffective assistance of counsel must show not only that counsel's performance was highly deficient, but also that the deficient performance prejudiced his or her defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). In order to satisfy this requirement, a defendant must first show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. The standard for constitutionally adequate attorney performance is that of "reasonably effective assistance." Id.

Therefore, in order to prove ineffectiveness, a defendant must demonstrate that his counsel's representation fell below an objective standard of reasonableness. Id. at 688. Then, to satisfy the prejudice prong of the two-part Strickland test, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). Additionally, the court's scrutiny of counsel's performance is highly deferential, and counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. 466 U.S. at 689-690; accord Bigelow v. Williams, 367 F.3d 562, 570 (6th Cir. 2004).

During the rearraignment on the charges to which the Defendant pleaded guilty, Judge David

9

L. Bunning carefully and thoroughly reviewed the charges, the plea agreement, and related sentencing guidelines, addressing specifically the issues raised by the Defendant in his petition:

> THE COURT: Okay. Has anyone made an effort or tried to induce you to plead guilty in this case?
>
> THE DEFENDANT: No, Your Honor.
>
> THE COURT: Is this guilty plea of your own free will because you are, in fact, guilty of these counts: 3, 5 and 8?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Has anyone threatened you to enter a plea of guilty?
>
> THE DEFENDANT: No, Your Honor.
>
> THE COURT: Has anyone forced you into entering this plea of guilty?
>
> THE DEFENDANT: No, Your Honor.

[Record No. 111, 9-10.]

As evidence of inducement, the Defendant refers to a comment made by his counsel regarding an issue discussed during the January 3, 2005 sentencing hearing. [Record No. 73.] The issue arose during sentencing as to whether or not the four-level enhancement for possession of firearms amounted to double counting. Defendant's attorney argued that only the standard two-level increase for firearms should be applied and that increasing the offense level by four was ruled out during plea negotiations.

The Court, and ultimately the United States, contended that one of the two-step enhancements was for the number of firearms involved while the second two-step enhancement was for the actual involvement of firearms in the commission of the crimes charged. [Record No. 111, 3-7.] In discussing the negotiations concerning the sentencing guidelines that were recommended

to the Court, Defendant's attorney stated: "So, you know, I basically sold my client on the fact that we had, you know, what appeared to be a 24-to-30-month deal. And the government came back and was wanting to go a little higher. We finally got back down to where we are now ..." [Id. at 6-7.] Judge Bunning declined to remove one of the two-step enhancements, stating that he could not ignore relevant conduct in his calculations under the Sentencing Guidelines. [Id. at 7.]

This statement by Defendant's counsel cannot be considered evidence of ineffective assistance of counsel and certainly cannot, by itself, prove that the Defendant was induced to sign the plea agreement. Reviewing the record, it is clear that Defendant's attorney negotiated a very favorable plea agreement with the government. Indeed, the Defendant stated clearly to Judge Bunning during his rearraignment on October 4, 2004, that he was satisfied with his counsel and signed the plea agreement freely. [Id.] Those statements occurred three months prior to counsel's statement at the sentencing hearing, which was held January 3, 2005. [Record No. 73.]

Defendant's next two arguments, that counsel failed to seek a conditional plea and to challenge confidential sources and scientific testing, can be addressed together. [Record No. 99, 5-8.] Defendant offers no evidence to show that conditional pleas make up "common practice" in the Sixth Circuit. [Id.] Furthermore, Defendant makes no showing that failure to insist on a conditional plea leads to the conclusion that counsel's performance was deficient.

Defendant also fails to demonstrate that this failure, even if it were to be considered deficient representation, actually prejudiced him in any way. It is very likely, in fact, that not pressing for concessions such as a conditional plea enabled Defendant's counsel to obtain favorable plea deal. A review of the indictment and plea agreement shows that the Defendant was facing up to 20 years imprisonment and up to a $1,000,000 fine for Count 3 and up to 10 years imprisonment and up to

a $250,000 fine for Count 5. Instead, Defendant's attorney negotiated for him a 37-month prison sentence. Judge Bunning also commented on the plea agreement: "And from looking at the plea agreement and the guideline calculations in the plea agreement, I must say that it appears to be a very beneficial plea agreement to you from the perspective of how much imprisonment you're saving by entering this plea of guilty." [Record No. 111, 8.]

As for Defendant's arguments concerning treatment of confidential sources and physical evidence, Defendant's counsel filed a motion to suppress all evidence obtained at Defendant's residence. [Record Nos. 22 & 23.] In his motion, counsel argued in part that the warrant was invalid because the confidential sources used were inadequate. [Id.] Counsel also filed a motion to preserve all evidence. [Record No. 25.] It appears from the record that Defendant's counsel in fact pursued all of the avenues of his defense that the Defendant claims were not undertaken.

Defendant concludes his petition by claiming that defense counsel failed to investigate possible defenses and to either declare a conflict of interest or file a direct appeal on Defendant's behalf based on a claim of ineffective assistance of counsel. [Record No. 99, 8-11.] Defendant offers no evidence to substantiate these claims and makes no showing that deficient representation would have resulted or prejudiced his defense in any way.

Generally, ineffective assistance of counsel claims are not cognizable in a direct criminal appeal. Massaro, 538 U.S. at 504-05. Such claims are more properly raised in a § 2255 proceeding. Id. at 504. It is also not realistic to expect appellate counsel who served as the defendant's trial counsel to raise an ineffective assistance of counsel claim on direct appeal. Ciak, 59 F.3d at 303-04; see also United States v. Delgado, 350 F.3d 520, 527 (6th Cir. 2003).

Moreover, given the high degree of deference afforded the tactical decisions of trial counsel,

12

the undersigned finds no evidence whatsoever that the Defendant was prejudiced by ineffective assistance of counsel. Indeed, the Defendant's own words at his rearraignment would seem to support this conclusion:

> THE COURT: All right. Now, Mr. Hall, you have retained Mr. Owens to represent you in this case. Are you fully satisfied with the advice and the representation that he's provided to you here? Are you happy with your lawyer?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Has he provided you with sound advice in this case?
>
> THE DEFENDANT: Yes, Your Honor.

[Record No. 111, at 7-8.]

The plea colloquy was the Defendant's opportunity to voice any reservations he have had concerning the representation he was receiving or the terms of the plea agreement. A proper plea colloquy, as was conducted by Judge Bunning, serves to cure any such misunderstandings or problems a defendant may have concerning the implications of a guilty plea. Ramos v. Rogers, 170 F.3d 560, 565 (6th Cir. 1999). A defendant's "solemn declaration of guilt carries a presumption of truthfulness." Blackledge v. Allison, 431 U.S. 63, 74 (1977). There is simply nothing in the record, and the Defendant offers no additional evidence, to indicate that Defendant's counsel in any way tricked or induced the Defendant to agree to the terms of the plea arrangement accepted by the Court. The Defendant has not shown that the statement by counsel at the sentencing hearing or any other alleged error, had a substantial and injurious effect on the proceedings. See Brecht, 507 U.S. at 637.

Thus, the undersigned finds the terms of the plea agreement, including the waiver, are valid. As a result, any of Defendant's ineffective assistance of counsel claims, to the extent they are offered

outside the context of whether he was induced to sign the plea agreement, are barred. Regardless of this conclusion, Defendant offers no evidence to substantiate his claims of ineffective assistance of counsel, and makes no showing that deficient representation prejudiced his defense in any way.

## IV. CONCLUSION

Accordingly, and for the reasons provided above, the undersigned hereby recommends that Defendant's motion to vacate, set aside, or correct his sentence [Record No. 99] filed pursuant to 28 U.S.C. § 2255 be denied, that the United States' motion to dismiss [Record No. 103] be granted, and that this action be dismissed with prejudice and stricken from the docket.

Specific objections to this Report and Recommendation must be filed within ten (10) days from the date of service thereof or further appeal is waived. United States v. Campbell, 261 F.3d 628, 632 (6th Cir. 2001); Bituminous Cas. Corp. v. Combs Contracting Inc., 236 F. Supp. 2d 737, 749-750 (E.D. Ky. 2002). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004); Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within ten (10) days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); Rule 72(b), Fed. R. Civ. P.

Signed February 5, 2007.



**Signed By:**
*Edward B. Atkins*  $\mathcal{EBA}$
**United States Magistrate Judge**

Date of Entry and Service: